**STATE of Minnesota, Respondent,**

v.

**Scott T. BERRISFORD, Appellant.**

**No. CX–83–327.**

Supreme Court of Minnesota.

Feb. 8, 1985.

---

Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka Co. Atty., Anoka, for respondent.

SCOTT, Justice.

This is an appeal from a conviction of murder in the first degree by an Anoka County District Court jury. The grand jury indicted four persons, including the appellant, as follows: Count I, first degree murder with premeditation and intent, Minn.Stat. §§ 609.185(1) and 609.05; Count II, murder in the first degree while committing a kidnapping, Minn.Stat. §§ 609.185(3) and 609.05; and Count III, kidnapping, Minn.Stat. §§ 609.25, subds. 1(3), 2(2) and 609.05. The appellant was tried separately. The jury returned a guilty verdict on all counts, and the court sentenced appellant to life imprisonment on Count I, murder in the first degree with premeditation and intent (Minn.Stat. §§ 609.185(1) and 609.05), only. We affirm.

On March 26, 1982, a rural mail carrier discovered a body lying face down in the snow in a swampy area off the roadway in Anoka County. A 1964 Oldsmobile was discovered stuck in the ditch in the vicinity, and a .22 caliber bullet casing was found lying about 20 feet from the body. The body was identified as David Studler, age 29, of St. Paul. The autopsy revealed a gunshot contact wound behind the right ear and a bullet in the base of the brain. According to the pathologist, the death was caused by this wound. The body revealed multiple abrasions and contusions, lacerations and bruises on the face and neck, and two skull fractures caused by blunt trauma—all consistent with a physical beating. Other evidence came principally from four witnesses: Edward Albrecht, one of the accomplices; Tracy Cardinal, a friend of appellant; Jeanne Gosselin, a woman who lived across the hall from Lloyd Hanley, another accomplice; and the appellant.

Gosselin testified that on the evening of March 25, 1982, she and the four principals indicted in this case, Donald Richard Dahn, Lloyd Allen Hanley, Edward Winston Albrecht, and the appellant, went to the Clover Club bar, where they persuaded David

Studler, the victim, to leave the bar with them. Once outside the bar, she stated, the four men commenced to beat Studler. They suspected Studler of burglarizing Dahn's apartment some months earlier. Following the beating, Albrecht drove Dahn's Pinto automobile to his house, with Hanley and Gosselin in the front seat and Dahn on top of Studler in the rear. Appellant followed in a 1964 Oldsmobile that belonged to his girlfriend's mother. Studler was then transferred to the trunk of the Oldsmobile. A short time later at Hanley's apartment, the appellant told Cardinal that there was someone in the trunk of his car. After driving around the block with Cardinal, appellant opened the trunk to show Cardinal that there was in fact someone in the trunk. Gosselin testified that she asked Hanley whether they were going to kill Studler, and Hanley responded, "Only if I don't get the answers I want."

Appellant and Albrecht got into the Oldsmobile and Dahn and Hanley into the Pinto. Albrecht noticed that appellant had a .22 caliber pistol. While driving to the murder scene, with Studler in the trunk of the Oldsmobile, appellant shouted to Studler to "shut up or he would plug him now." Albrecht continued with his testimony that appellant got out of the Oldsmobile at the crime scene and opened the trunk. All the men participated in kicking Studler for 5 to 10 minutes. Appellant and Hanley then threw Studler into the ditch. Appellant handed Hanley the .22 pistol. Hanley loaded it and handed it back to appellant, who said, "I want to pop him one." Appellant headed toward the ditch where Studler was now standing. Studler said, "You sons-of-a-bitches, you're going to have to kill me." Appellant responded, "That's what I intend to do." Albrecht testified that he heard two shots, and saw Studler hit the ground. He stated that appellant was holding the gun.

As Albrecht was driving away in the Oldsmobile with appellant as a passenger, he slid into the ditch and blew out a tire. Appellant or Hanley said, "Forget it, we'll just report it stolen." Appellant wiped the car down with a pair of gloves to remove fingerprints. All four men got into the Pinto and drove away together. According to Albrecht, as they drove back to St. Paul, appellant laughingly said, "Did you see the way his head jerked?" Appellant handed Hanley the gun. Hanley took it apart and threw the parts out the window. Hanley praised appellant for having done a good job.

Cardinal testified that later, at appellant's apartment, appellant said to Cardinal, "I shot him." Appellant told Cardinal he had to shoot the victim twice because he didn't think he hit him the first time. Appellant demonstrated to Cardinal how he had done the shooting by making a gesture with his hand and outstretched finger pointing at the back of Cardinal's head.

Gosselin testified that Hanley, who "never loses his cool," looked unnerved when he returned to his apartment. Hanley said, "He's dead." Gosselin asked how, and Hanley said, "Somebody got carried away." When asked who got carried away, Hanley answered, "Scott." The following morning Hanley instructed Gosselin to provide an alibi for appellant and himself by telling the police that they were playing cribbage during the time the murder took place.

Appellant's testimony differed in many respects from the testimony of the other witnesses at trial. Appellant and Studler were apparently friends. Appellant argues that no explanation or motive existed for him to shoot his friend. Appellant denied making most of the statements attributed to him by Cardinal and Gosselin. He stated that he thought the others wanted to lure Studler out of the bar to question him about the burglary. Appellant stated that he did not shoot Studler. Appellant's fiancee testified that he told her early Friday, March 26, that he didn't kill Studler. Appellant advances several theories as to why the others might have tried to place the blame on him, none of which was supported by evidence at trial.

The issues raised by the appellant are as follows:

(1) That the evidence was insufficient as a matter of law to sustain the first degree murder conviction.

(2) That the trial court erroneously admitted highly prejudicial hearsay testimony without providing appellant an opportunity to confront the person who supposedly made the statements.

(3) That the trial court committed reversible error in its instructions to the jury when it failed to adequately explain the required state of appellant's mind necessary for a verdict of guilty of first degree murder; when it instructed on various methods of proof of first degree murder which allowed the jury to disregard the requirement of a unanimous verdict; and when it improperly instructed the jury on circumstantial evidence and reasonable doubt.

1. The first count of the indictment upon which appellant was convicted and sentenced reads as follows:

> In that on or about the 25th or 26th day of March, 1982, in the township of Columbus, County of Anoka, State of Minnesota, Donald Richard Dahn, Scott Timothy Berrisford, Lloyd Allen Hanley and Edward Winston Albrecht, each intentionally aided, advised and counseled with one another to cause the death of a human being, David Gene Studler, with premeditation and with intent to effect the death of David Gene Studler * * *.

■ The evidence upon which the jury reached its conclusion that appellant was guilty of murder in the first degree seems overwhelming. The facts clearly show and the jury properly found that the appellant considered, planned and prepared to shoot Studler before actually doing so. The elements of the first degree murder statute, Minn.Stat. § 609.185(1),[1] and the statutory definition of premeditation under Minn.

Stat. § 609.18 [2] seem to have been amply satisfied. This was a gang-style execution. The accomplices had a motive to kill Studler; they suspected him of burglarizing Dahn's apartment and stealing some guns. The record shows that each agreed that they would kill whoever had committed the burglary. While it is true that much of the evidence from the crime scene was based upon the testimony of an accomplice, the accomplice's testimony was amply corroborated. The four abducted Studler from the bar and took him to a remote part of Anoka County, where he was shot to death. The medical examiner testified that Studler was killed by a gunshot contact wound behind the right ear. We find little merit to the appellant's contention that there was insufficient evidence to find him guilty of first degree murder.

2. The appellant contends that the trial court permitted the State to offer testimony concerning statements made to Gosselin by Hanley and conversations between Hanley and appellant overheard by Gosselin, denying his right to confront witnesses against him, creating prejudice, and denying him a fair trial. The appellant refers to the testimony recited in the facts, and contends that there were numerous other instances of such judicial misconduct.

■ The trial court admitted testimony by Jeanne Gosselin relating to a conversation that took place in her apartment between Hanley and appellant the day after the murder. She overheard the following:

> HANLEY: You "made a clean shot."
>
> APPELLANT: "Well, I did it the way Ed showed me."
>
> HANLEY: "Well there is going to be some more jobs coming up. How much you want for these jobs, you know, moneywise?"

---

**1.** Minn.Stat. § 609.185(1) (1984) provides:
  Whoever does any·of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:
  (1) Causes the death of a human being with premeditation and with intent to effect the death of the person or of another;

**2.** Minn.Stat. § 609.18 (1984) reads:
  For the purposes of sections 609.185 and 609.19, "premeditation" means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission.

APPELLANT: " * * * would do it out of loyalty only."

HANLEY: "He was probably dead already."

APPELLANT: "No, he was making some noises. Did you hear him begging? 'Please don't do it.'"

HANLEY: "Yeah."

There is an objection as to these statements overheard between Hanley and appellant. Under Rule 801(d)(2)(B), Minnesota Rules of Evidence, Hanley's statements were properly admitted into evidence over a hearsay objection because a statement is not hearsay if "[t]he statement is offered against a party and is * * * a statement of which he has manifested his adoption or belief in its truth * * *." *Id.* Hanley's statements were made in the presence of Gosselin, who was not a party to the crime. The statements involved the appellant as the one who shot Studler. The appellant did not remain silent; he responded in a positive manner, further describing his involvement in the murder. We have no problem under the rules of evidence in admitting a positive response in the presence of a third party affirming an inculpatory statement of an accomplice as an adoptive admission.

■ There is further objection to Gosselin's testimony about the statements Hanley made to her after returning to his apartment the night of the murder. Hanley told her, "He's dead * * * [s]omebody got carried away." When Gosselin asked who, he said, "Scott." The trial court admitted this under the excited utterance exception to the hearsay rule, Minn.R.Evid. 803(2), and the other exceptions mentioned in Minn.R.Evid. 804(b)(5). The issue raised by appellant is whether Hanley was under a sufficient aura of excitement to ensure the trustworthiness of the statement. This is within the sound discretion of the trial court. *See State v. Taylor*, 258 N.W.2d 615 (Minn.1977); Committee Comment, Minn.R.Evid. 803, and Minn.R.Evid. 104(a). Hanley's statements were made just 90 minutes after the murder. This murder, without doubt, created an excited state among the participants. On the morning after the murder, Albrecht "was still scared * * * and shaky" according to the testimony. According to Albrecht's wife, Colleen, he was still "very upset." Cardinal testified that Hanley appeared nervous when he returned to his apartment after the murder. Gosselin also testified that Hanley looked "unnerved." Gosselin saw Hanley attempt to pour some whiskey in a coffee cup, and throw or slide the cup in frustration. This basis of trustworthiness allows the admission of the statements in the discretion of the trial court as excited utterance exceptions to the hearsay rule. The corroborating evidence also provides circumstantial guarantees of trustworthiness. Everything that occurred that night at the scene, the reason for the participants being there, and the expert physical evidence all seem to correlate.

■ Gosselin's testimony that Hanley told her, "You are going to be Scott['s] and my alibi, that we were playing cribbage all that night," is also objected to. The trial court ruled that Hanley's statement was admissible under Minn.R.Evid. 801(d)(2)(E), which provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. *Id.* Appellant contends it was error to admit the statement because it was not made during the conspiracy. It is unquestioned that where inferences can be drawn that the participants are conspiring to conceal the crime, statements creating the alibi are made during the furtherance of the conspiracy. It can also be said that Hanley's statements are reliable because they are against penal interest. *See* Minn. R.Evid. 804(b)(3). Therefore, the trial court did not clearly abuse its discretion in admitting Hanley's statements under the coconspirator exception to the hearsay rule.

■ 3. Appellant further contends that the trial court committed prejudicial error in the final instructions to the jury. The instructions stated three different methods by which the jury could find appellant guilty under Count I, murder in the first degree with premeditation and intent,

Minn.Stat. §§ 609.185(1) and 609.05 (1984). Under the first, the appellant was guilty if he killed Studler with premeditation and intent. Under the second, he was guilty if an accomplice killed Studler with premeditation and intent and the appellant intentionally aided in the murder. Under the third, appellant was guilty if an accomplice, with premeditation and intent, killed Studler in the pursuance of the kidnapping, and appellant committed the kidnapping or aided the kidnapping, and the murder was a reasonably foreseeable consequence of the kidnapping. The appellant contends that the trial court's instructions failed to accurately describe the required state of appellant's mind necessary for a guilty verdict under the different methods when he was merely aiding in the crime. The appeal is from a set of facts sufficient to show that the jury based its verdict upon overwhelming evidence that appellant himself committed the murder with premeditation and with intent. If the appellant's story were to be believed, Minn.Stat. § 609.05, subd. 1 (1984), states that a person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels or conspires with or otherwise procures the other to commit the crime, and subd. 2 states that a person liable under subd. 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.[3] This statute was also submitted to the jury, and clearly supports the court's instructions surrounding an evidentiary conspiracy in which the appellant aided or conspired. We do not find a basis for the appellant's claim of reversible error committed by the court on circumstantial evidence, reasonable doubt, the failure to adequately explain the required state of the appellant's mind, or allowing the jury to disregard the requirements of a unanimous verdict. The instructions, considered from all four corners, are correct and complete.

We therefore affirm the appellant's conviction and sentence for murder in the first degree. We find sufficient evidence as a matter of law. We find the trial court's evidentiary rulings to be admissible under recognized exceptions to the hearsay rule. We also find that the trial court's jury instructions properly explained the required state of mind.

Affirmed.

---

3. Minn.Stat. § 609.05 (1984) reads in part:

   Subdivision 1. A person is criminally liable for a crime committed by another if he intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

   Subd. 2. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended.