Scott Timothy **BERRISFORD**,
Appellant,

v.

Frank W. **WOOD**, Warden, Appellee.

No. 86–5182.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1987.

Decided Aug. 14, 1987.

---

**9.** The jury awarded Peery $16,000 in compensa-   tory damages. This award was not appealed.

Cecilia Michel, Asst. Federal Public Defender of Minneapolis, Minn., for appellant.

Dan Klint, Asst. Anoka Co. Atty., Anoka, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Scott T. Berrisford was found guilty by a Minnesota state court jury on two counts of first degree murder, Minn.Stat. § 609.-185(1) & (3), and one count of kidnapping, Minn.Stat. § 609.25. His conviction was affirmed on direct appeal. *State v. Berrisford,* 361 N.W.2d 846 (Minn.1985). He thereafter filed in the District Court a petition under 28 U.S.C. § 2254 for a writ of habeas corpus, which was denied. On appeal Berrisford contends that (1) the state trial court's evidentiary rulings admitting various out-of-court statements made by an accomplice violated his Sixth Amendment right of confrontation and deprived him of a fair trial; (2) the trial court's instructions to the jury denied him due process of law by (i) effectively eliminating the element of his specific intent under several aiding and abetting theories; (ii) submitting alternative theories under which he could be found guilty that allowed the jurors to disagree as to his participation in the murder and thus conceivably permitted a non-unanimous jury verdict; and (iii) inadequately and inaccurately explaining direct and circumstantial evidence and defining "reasonable doubt"; and (3) there was insufficient evidence to convict him of first degree murder. For the reasons discussed below, we affirm. The factual background of this case is sufficiently set forth in the Minnesota Supreme Court's opinion. *See* 361 N.W.2d at 847–848. We therefore will not restate the facts in their entirety, but will discuss as necessary those facts relevant to the issues that Berrisford here raises.

## I.

Berrisford's first contention is that the state trial court violated his Sixth Amendment right of confrontation and denied him a fair trial in violation of his Fifth Amendment right to due process, as applied to the States through the Fourteenth Amendment Due Process Clause, by admitting into evidence various out-of-court statements made after the murder by Lloyd Allen Hanley, an accomplice to the murder and kidnapping. Hanley's girlfriend, Jeanne Gosselin, testified about statements Hanley made to her on different occasions and about a conversation between Hanley and Berrisford that she overheard.

Questions concerning the admissibility of evidence are matters of state law and are reviewable in federal habeas corpus proceedings only when the alleged error infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process. *Wood v. Lockhart,* 809 F.2d 457, 459–460 (8th Cir.1987); *Manning-El v. Wyrick,* 738 F.2d 321, 322 (8th Cir.), *cert. denied,* 469 U.S. 919, 105 S.Ct. 298, 83 L.Ed.2d 233 (1984). Regarding the Sixth Amendment issue raised by Berrisford, the United States Supreme Court has stated that

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). With this standard in mind, we turn to each of Berrisford's contentions regarding the trial court's evidentiary rulings.

### A.

Gosselin testified that although Hanley "never loses his cool" he looked unnerved when he returned to his apartment approximately 90 minutes after the murder. According to Gosselin, Hanley simply stood motionless and stated, "He's dead." Hanley then attempted to pour himself a drink of whiskey, but grabbed a cup instead and threw it across the table. In response to a question from Gosselin, Hanley stated, "Somebody got carried away." When Gosselin asked who it was, Hanley replied, "Scott."[1] Trial Transcript (Tr.) 868, 879–881.

■ Over defense counsel's hearsay objection, the trial court admitted these hearsay statements under the "excited utterance" exception, Minn.R.Evid. 803(2), and the "catch-all" exception, Minn.R.Evid. 804(b)(5). Berrisford contends that the statements lacked sufficient indicia of reliability and trustworthiness to be admitted. Berrisford points to the amount of time that elapsed after the murder before the statements were made (during which time, it is alleged, Hanley regained his reflective capacity and was calmly and consciously fabricating an alibi) and to the self-serving nature of the statements. Given this lack of trustworthiness, Hanley's unavailability for cross-examination,[2] and the fact that these statements were used to corroborate the testimony of another accomplice (Edward Albrecht) implicating Berrisford in the murder,[3] Berrisford argues that the admission of the statements violated his Sixth Amendment right of confrontation and deprived him of a fair trial.

The Minnesota Supreme Court held that Hanley's statements were admissible under state law as an excited utterance. 361 N.W.2d at 850 (citing Minn.R.Evid. 803(2)). Thus, Gosselin's testimony regarding Hanley's statements "falls within a firmly rooted hearsay exception." Beyond that, however, Hanley's statements were supported by "particularized guarantees of trustworthiness" in the form of substantial corroboration. *Cf. United States v. Ward,* 552 F.2d 1080, 1082–1083 (5th Cir.), *cert. denied,* 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977). Another accomplice, Edward Albrecht, testified that Berrisford shot the victim, David Studler. Tr. 552–553. Tracy Cardinal, a friend of Berrisford, testified that Berrisford said he shot Studler. Tr. 347–349. In addition, Berrisford made an incriminating statement to a police investigator. Tr. 1576. A review of the trial transcript convinces us that Hanley's statements bore "adequate 'indicia of reliability'" and were supported by "particularized guarantees of trustworthiness" sufficient to overcome any concerns regarding Berrisford's Sixth Amendment right of confrontation or his right to a fair trial.

### B.

■ Berrisford next challenges the admission of Gosselin's testimony regarding a

---

1. Berrisford was the only accomplice named "Scott."

2. Hanley did not testify at Berrisford's trial. His attorney advised the trial court that Hanley would assert his Fifth Amendment privilege against self-incrimination to all questions if called as a witness. The trial court therefore prohibited Berrisford from calling Hanley to the stand simply to force him to invoke his Fifth Amendment right in the presence of the jury. Berrisford does not challenge the finding that Hanley thus was "unavailable" to testify at trial. *Cf. Phillips v. Wyrick,* 558 F.2d 489, 494 (8th Cir.1977), *cert. denied,* 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978).

3. Minn.Stat. § 634.04 provides that a conviction cannot be based upon the testimony of an accomplice unless it is corroborated by other evidence that "tends to convict the defendant of the commission of the offense." Berrisford argues that Hanley's out-of-court statements were used to corroborate Albrecht's testimony. To the extent Berrisford argues that the corroboration requirement of § 634.04 was not satisfied, that issue of state law is not cognizable on habeas review. *Gipson v. Lockhart,* 692 F.2d 66, 68 (8th Cir.1982). To the extent he argues that there was insufficient evidence to convict him of first degree murder, that issue is considered in Part III, *infra.*

conversation between Hanley and Berrisford in her apartment. Over defense counsel's objection, Gosselin testified that she overheard the following conversation:

HANLEY: You made a clean shot.

BERRISFORD: Well, I did it the way Ed showed me.

HANLEY: Well, there is going to be some more jobs coming up. How much you want for these jobs, you know, moneywise?

BERRISFORD: I would do it out of loyalty only. I know if I didn't do it I wouldn't be in the club.

HANLEY: He was probably dead already anyway.

BERRISFORD: No, he was making some noises. Did you hear him begging—please don't do it?

HANLEY: Yeah.

Tr. 895–900. The Minnesota Supreme Court held that these statements were properly admitted under Minn.R.Evid. 801(d)(2)(B) as an "adoptive admission." 361 N.W.2d at 850; *cf. United States v. Handy*, 668 F.2d 407, 408 (8th Cir.1982) (defendant's affirmative statement made in response to co-conspirator's statement admissible as an adoptive admission under Fed.R.Evid. 801(d)(2)(B)). For the same reasons stated in Part I.A., *supra*, we find no violation of Berrisford's Sixth Amendment right of confrontation or of his right to a fair trial resulting from the admission of these statements. The statements were admitted into evidence under a firmly rooted hearsay "exception" (though adoptive admissions technically are defined as not hearsay) and were corroborated by other evidence, thus providing "adequate 'indicia of reliability' " for their admission.

## C.

Gosselin also testified that the day after the murder Hanley told her, "You are going to be Scott [sic] and my alibi. We were playing cribbage all night." Tr. 888. The

trial court admitted this statement, over defense counsel's objection, under the co-conspirator provision of Minn.R.Evid. 801(d)(2)(E). The Minnesota Supreme Court upheld this ruling. 361 N.W.2d at 850. Berrisford challenges the admission of the statement as a violation of his right of confrontation, citing *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).

Berrisford's reliance on *Krulewitch* is misplaced. That case (which was on direct review to the Supreme Court via writ of certiorari) simply stands for the proposition that, as a matter of federal evidence law,[4] before a co-conspirator's out-of-court statement can be admitted against a defendant, it must be shown to have been made in furtherance of the conspiracy charged. Statements made in furtherance of an implied but uncharged conspiracy aimed at concealing the crime and avoiding detection and punishment are not admissible. *Id.* at 442–44, 69 S.Ct. at 717–18. *Krulewitch* did not involve a constitutional issue. *Id.* at 459, 69 S.Ct. at 725 (Burton, J., dissenting). Because only constitutional issues are cognizable in a § 2254 habeas proceeding, *Krulewitch* provides no support for Berrisford's position.

■ Having reviewed the trial transcript, we find no violation of Berrisford's Sixth Amendment right of confrontation or of his right to a fair trial in the admission of Hanley's statement to Gosselin regarding an alibi. The statement falls within a firmly rooted hearsay exception inasmuch as it was against Hanley's penal interest. *See State v. Berrisford*, 361 N.W.2d at 850 (citing Minn.R.Evid. 804(b)(3)); *cf. Bourjaily v. United States*, —— U.S. ——, ——, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144 (1987) (requirements for admission of co-conspirator's out-of-court statements under Fed.R.Evid. 801(d)(2)(E) identical to requirements of Confrontation Clause).

---

**4.** *Krulewitch* was decided in 1949, well before the Federal Rules of Evidence were codified in 1975. The rule announced in *Krulewitch*, however, was adopted in Fed.R.Evid. 801(d)(2)(E). *See id.* Advisory Committee Note ("The rule is consistent with the position of the Supreme

Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949).").

Moreover, we do not believe the admission of the statement was prejudicial to Berrisford. Berrisford testified at trial and admitted to being involved to some degree in the kidnapping and killing. The fact that Hanley attempted to fabricate an alibi for himself and Berrisford seems hardly relevant to (much less dispositive of) the issue of Berrisford's exact involvement and participation and does not place Berrisford in any worse position than that in which his own admissions place him. Indeed, Berrisford testified about those same out-of-court statements he now challenges. Tr. 1886, 1888–1889. Thus, even assuming *arguendo* that those statements were erroneously admitted, their admission was harmless error beyond a reasonable doubt.

#### D.

Finally, Berrisford challenges the admission of Hanley's statements to Berrisford (in a conversation overheard by Gosselin) to the effect that they shouldn't have trusted someone (apparently referring to one of the other accomplices) and that it was a mistake to leave the car at the crime scene. Tr. 890–891. Berrisford also challenges the admission of Hanley's statement to Gosselin that if she continued to argue she would end up like Studler (the murder victim). Tr. 894. The trial court did not expressly state under what hearsay exception it was admitting the first two statements, but ruled that the third statement was not hearsay because as a threat it was not offered to prove the truth of the matter asserted. On appeal, the State asserts that the first two statements were properly admitted as adoptive admissions under Minn. R.Evid. 801(d)(2)(B), and that the third was admissible for the reasons relied upon by the trial court.

■ We need not decide whether these statements were properly admitted. A review of the trial transcript discloses that any error in their admission was harmless beyond a reasonable doubt. The statements do not appear particularly probative on the issue of the extent of Berrisford's involvement and participation in the kidnapping and murder. Although the state-

ments are quite incriminating as to Hanley, we are unable to discern how they prejudiced Berrisford. The statements certainly cannot be regarded as inflammatory evidence that improperly influenced the jury and deprived Berrisford of a fair trial. Considering the overwhelming evidence of Berrisford's guilt of first degree premeditated murder, we are satisfied that the admission of these statements, if error at all, was harmless error beyond a reasonable doubt.

#### II.

■ Berrisford challenges the jury instructions on three grounds. We are mindful of the general rule that federal habeas corpus relief from a state conviction is not available because of improper jury instructions unless the error constitutes a fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive the defendant of a fair trial. *See Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Williams v. Lockhart,* 736 F.2d 1264, 1267 (8th Cir.1984). We measure each of Berrisford's contentions against this standard.

#### A.

Berrisford first contends that the trial court's jury instructions failed to explain accurately or adequately the state of mind necessary under Minn.Stat. § 609.185 to find him guilty of first degree murder on an aiding and abetting theory. The trial court instructed the jury that Berrisford could be found guilty on Count I (first degree murder with premeditation and intent, Minn.Stat. § 609.185(1)) if (1) Berrisford killed Studler with premeditation and intent; or (2) an accomplice killed Studler with premeditation and intent, and Berrisford intentionally aided, advised, or conspired with the accomplice to commit the murder; or (3) an accomplice killed Studler with premeditation and intent in pursuance of the kidnapping, and Berrisford intentionally committed the kidnapping or intentionally aided, advised, or conspired with the accomplice to kidnap Studler and the mur-

der was reasonably foreseeable by Berrisford as a probable consequence thereof. Tr. 1942–1945. Berrisford objects to theories (2) and (3) of this instruction. The trial court further instructed the jury that Berrisford could be found guilty on Count II (first degree murder while committing a kidnapping or felony murder, Minn.Stat. § 609.185(3)) if (1) Berrisford intentionally killed Studler while intentionally committing the kidnapping or while intentionally aiding, advising, or conspiring with accomplices to kidnap Studler; or (2) an accomplice intentionally killed Studler in the course of the kidnapping, and Berrisford intentionally aided, advised, or conspired to commit the kidnapping. Tr. 1947–1949. Berrisford challenges theory (2) of this instruction.

Berrisford contends that the trial court should have instructed the jury that before they could return a guilty verdict under any of the aiding and abetting theories they first must find that Berrisford had the same specific intent as the accomplice who was the actual killer. Berrisford argues that because the instructions did not require the jury to find that he had the requisite specific intent, only that his accomplice (the actual killer) had the requisite intent, they effectively created a conclusive, irrebuttable presumption on an essential element of the prosecution's case (Berrisford's intent) and had the effect of either eliminating Berrisford's intent as an issue or shifting the burden of proof on that issue, in violation of his constitutional right to due process of law. *See Mullaney v.*

*Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). The issue raised by Berrisford brings into focus the interplay between the first degree murder statute, Minn.Stat. § 609.185,[5] and the aiding and abetting statute, Minn.Stat. § 609.05.[6]

■ On this issue, the Minnesota Supreme Court found no error in the instructions. 361 N.W.2d at 851. In any event, mere errors of state law are not cognizable on federal habeas review. As to the federal constitutional issue, due process does not require that there be a distinct and separate instruction regarding specific intent in cases submitting an aiding and abetting instruction. *See Nye & Nissen v. United States,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *Willard v. California,* 812 F.2d 461, 463 (9th Cir.1987). Moreover, we believe the instructions given to the jury adequately submitted the issue of Berrisford's intent under the aiding and abetting theories. *Cf. Fryer v. Nix,* 775 F.2d 979, 990 (8th Cir.1985). To the extent that the instruction on the second theory of Count II was deficient,[7] any error was harmless beyond a reasonable doubt. *See Rose v. Clark,* —— U.S. ——, ——, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986). The State's case-in-chief proceeded on the theory that Berrisford himself killed Studler with premeditation and intent. The evidence, viewed in the light most favorable to the State, is overwhelming of Berrisford's

---

5. Minn.Stat. § 609.185 provides, in relevant part:

**609.185 Murder in the first degree**

Whoever does any of the following is guilty of murder in the first degree ...:

(1) Causes the death of a human being with premeditation and with intent to effect the death of the person or of another;

....

(3) Causes the death of a human being with intent to effect the death of the person or another, while committing ... kidnapping....

6. Minn.Stat. § 609.05 provides, in relevant part:

**609.05. Liability for crimes of another**

1. A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

2. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing ... the crime intended....

7. It appears that the trial court, in reading this instruction to the jury, failed to include the additional element that the intentional killing of David Studler by an accomplice in the course of the kidnapping was reasonably foreseeable by Berrisford as a probable consequence thereof. Tr. 1948–1949.

guilt and clearly supports the State's theory that Berrisford was the trigger man and that he killed Studler with premeditation and intent.

## B.

Berrisford next argues that the instructions permitted the jury to disregard the rule requiring a unanimous verdict of guilty. This result was possible, he argues, because the trial court submitted alternative theories under which he could be found guilty of first degree murder. Thus, the jurors could have disagreed substantially as to Berrisford's exact participation and involvement in the kidnapping and murder, yet still return a general verdict of guilty. Berrisford supports his argument by citing to *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977).

■ This Court previously has considered and rejected a contention precisely like Berrisford's. In *Fryer v. Nix,* we stated, "The mere fact ... that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict." 775 F.2d at 992 (citing *United States v. Bolts,* 558 F.2d 316, 326 n. 4 (5th Cir.1977), *cert. denied,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1978)).[8] As in *Fryer,* it is not alleged (nor does the trial transcript reveal) that the trial court instructed the jury that it was permitted to reach a non-unanimous verdict. To the contrary, the trial court specifically instructed the jury on two separate occasions that a verdict of guilty must be unanimous. Tr. 1938, 2134. Moreover, as noted above, there was overwhelming evidence that Berrisford himself killed Studler with premeditation and intent. Thus, there is little question as to the extent of Berrisford's participation in the crimes. We find no error in the instructions in this regard.

## C.

Berrisford challenges, on several grounds, the trial court's instructions re-

garding direct and circumstantial evidence, Tr. 48–50, and the definition of "reasonable doubt," Tr. 1937–1938. We have reviewed the trial court's jury instructions in their entirety with Berrisford's contentions in mind. Though the instructions are not models of brevity and clarity and differ to some degree from suggested pattern instructions used in Minnesota, the errors therein, if any, clearly do not rise to the level of constitutional significance in the sense of their resulting in a "complete miscarriage of justice" or depriving Berrisford of a fair trial. *See Williams v. Lockhart,* 736 F.2d at 1267; *cf. United States v. Knight,* 547 F.2d 75, 77 (8th Cir.1976). Thus, we reject Berrisford's contentions with respect to these instructions, since the record provides no basis for federal habeas relief.

## III.

Finally, Berrisford argues that there was insufficient evidence to find him guilty of first degree murder beyond a reasonable doubt. The relevant inquiry, for due process purposes, on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). An exhaustive review of the more than 2,100 pages of trial transcript convinces us that there was sufficient, indeed overwhelming, evidence from which a rational trier of fact could have found Berrisford guilty of first degree murder beyond a reasonable doubt. *See Berrisford,* 361 N.W.2d at 847–48.

For the reasons stated above, we affirm the District Court's denial of Berrisford's petition for a writ of habeas corpus.

---

8. In *Bolts* the Fifth Circuit limited *Gipson* to those cases in which the trial court specifically

has sanctioned a non-unanimous verdict. 558 F.2d at 326 n. 4.