David K. HARRISON, Appellant,

v.

John DAHM, Warden, Lincoln Correction Center, Appellee.

No. 88–2596.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1989.

Decided July 27, 1989.

Donald L. Swanson, Omaha, Neb., for appellant.

Lynne Rae Fritz, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and HEANEY, Senior Circuit Judge.

MAGILL, Circuit Judge.

David K. Harrison petitioned the district court[1] for habeas corpus relief under 28 U.S.C. § 2254. His petition was denied. On appeal, Harrison contends that his state court conviction for the first degree murder of his estranged wife was obtained in violation of his rights under the United States Constitution.[2] Specifically, he claims that the trial court deprived him of a fair trial by: (1) refusing to allow a defense witness to testify concerning Harrison's state of mind at the time of the shooting; and (2) refusing to instruct the jury concerning the "excited utterance" exception to the hearsay rule and Harrison's alleged lack of motive to commit murder. Finding no error in the district court's refusal to grant Harrison's petition, we affirm.

## I.

Just before 9:00 a.m. on June 4, 1984, there was a shooting at the Omaha, Nebraska residence of Maria Sousa Harrison, the estranged wife of petitioner David K. Harrison. Harrison met rescue workers there and stated that his wife was still alive and that she needed help. The rescue workers found Mrs. Harrison on the floor with a gunshot wound to the head. Attempts to resuscitate her failed and she died.

Omaha police investigators later discovered that David Harrison, who was arrested at the scene with a .22 caliber Derringer and four cartridges (one of which had been fired) on his person, had shot his wife after an argument. Harrison does not deny shooting her, but he maintains that the shooting was accidental.

During his trial, Harrison alleged that on the morning of June 4, he called his wife and then went to her residence (armed with the .22 and the four cartridges) to speak with her. They argued and began to slap each other. His wife went into the bathroom. Harrison found a pair of bluejeans that belonged to him and went into the bathroom to change. As he emptied his

---

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

2. Harrison was sentenced to life in prison.

pockets, he held his gun in his right hand. His wife grabbed the gun and struggled to take it from him. It fired and wounded her. Harrison dragged her from the bathroom and then dialed 911, reporting that he had accidentally shot his wife. Harrison alleges that he carried the .22 for self-defense because he had received a threatening phone call and had been "chased" by a car. He claims that he had loaned the .22 to Mr. Barry Blessing earlier that year, but asked Blessing to return it on or about April 20 because he felt he was in danger. Harrison did not report either of the alleged threatening incidents until after he was arrested for shooting his wife.

Other testimony offered during Harrison's trial contrasted sharply with his account. Various witnesses described:

(1) multiple arguments between Harrison and his wife;

(2) unsuccessful attempts by Harrison to find her at her residence;

(3) demands by Harrison to be admitted to her residence;

(4) unsuccessful attempts by Harrison to reach his wife on the phone during the week prior to the shooting;

(5) a statement by Harrison that his wife was "in deep shit * * * and her ass was in a sling * * * and she would be dead meat" the next time he saw her;

(6) attempts by Mrs. Harrison to av.id staying at her residence because she feared Harrison.

The prosecution demonstrated that the .22 was not defective or malfunctioning. In order for it to fire, the hammer and the trigger had to be pulled. A firearms expert testified that a victim shot by Harrison's .22 during a struggle would have powder burns. Mrs. Harrison had none.

The jury returned a guilty verdict and the state trial court entered judgment against Harrison for first degree murder. The Nebraska Supreme Court affirmed the judgment on direct appeal. *State v. Harrison,* 378 N.W.2d 199 (1985). Harrison then petitioned for federal habeas relief, alleging that he had been deprived of a fair trial. A United States Magistrate entered a report recommending denial of the writ. The district court denied Harrison's petition on October 7, 1988, giving rise to this appeal.

## II.

Harrison alleges that we should reverse the district court's denial of his habeas petition because he was deprived of a fair trial in the state trial court. We affirm the denial of the writ because Harrison has failed to establish any violation of his rights under the United States Constitution.

■ Harrison claims that the trial court erroneously granted the state's hearsay objection when he called Blessing as a witness. Harrison wanted Blessing to testify that (1) he returned the .22 to Harrison six weeks before the shooting; and (2) Harrison told him he needed the gun for self-protection. Harrison contends that this testimony would have established that at the time of the shooting, he did not have the state of mind to commit murder. Hence, the argument concludes, the granting of the state's hearsay objection deprived Harrison of a fair trial. We disagree. In *Maggitt v. Wyrick,* 533 F.2d 383 (8th Cir. 1976), this court held that:

[Q]uestions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases.

*Id.* at 385. *See also Williams v. Lockhart,* 736 F.2d 1264 (8th Cir.1984); *Riley v. Lockhart,* 726 F.2d 421 (8th Cir.1984).

■ In light of *Maggitt,* we are not convinced that Harrison's evidentiary contention gives rise to a constitutional error subject to redress in federal court. Harrison described his need to protect himself to Blessing in April 1984, so its probativeness as to his state of mind at the time of the shooting is dubious. Moreover, a police officer was permitted to testify that Harrison claimed that self-protection necessitated his carrying the .22. Harrison also articulated that claim on the stand, so the

jury had ample access to the underpinning of his theory that he carried the gun for self-protection, not murder. Would additional testimony to that effect from Blessing have helped Harrison's case? Perhaps, but since it would have been cumulative and, at best, mildly probative, we do not believe that its exclusion was so "gross" [and] "conspicuously prejudicial," *see Maggitt v. Wyrick,* 533 F.2d at 385 (*quoting Taylor v. Minnesota,* 466 F.2d 1119, 1121 (8th Cir.1972), *cert. denied,* 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973); *United States ex rel. Cannon v. Maroney,* 373 F.2d 908, 910 (3d Cir.1967)), that it negated the trial's "fundamental fairness." *See Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 289–90, 86 L.Ed. 166 (1941).

■ Harrison also claims that his petition should have been granted because the trial court erroneously refused to instruct the jury concerning the "excited utterance" exception to the hearsay rule and his alleged lack of motive to commit murder.[3] He contends that without these two instructions, his trial was fundamentally unfair. Again, we disagree. In *Berrisford v. Wood,* 826 F.2d 747 (8th Cir.1987), this court held that:

> [F]ederal habeas corpus relief from a state conviction is not available because of improper jury instructions unless the error constitutes a fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive the defendant of a fair trial.

*Id.* at 752. *See also Williams v. Lockhart,* 736 F.2d 1264 (8th Cir.1984) (habeas relief for faulty instructions is available only when petitioner establishes that they resulted in a fundamental defect which inherently results in a complete miscarriage of justice); *DeBerry v. Wolff,* 513 F.2d 1336 (8th Cir.1975) (claimed error in instructions to the jury are generally not of such constitutional magnitude as to provide basis for habeas corpus relief); *Dietz v. Solem,* 640 F.2d 126 (8th Cir.1981) (same).

■ These cases are quite compelling in their insistence that nothing short of a complete miscarriage of justice justifies federal habeas relief based on erroneous instructions. There is no indication in the record that such a miscarriage occurred in Harrison's trial. The Nebraska Supreme Court found that there was considerable evidence of motive presented in the trial court, i.e., Harrison's anger caused by marital problems (including his wife's alleged infidelities and lengthy absences from him and their children). Therefore, the court's refusal to instruct the jury concerning lack of motive does not appear erroneous. Perhaps more importantly, as Harrison's proposed instruction states, *see supra* note 4, motive is not an essential element of first degree murder. Therefore, we do not believe that the trial court's refusal to give the proposed motive instruction created a fundamental defect causing a complete miscarriage of justice.

■ Similarly, the district court did not err in concluding that the trial court's refusal to give the jury Harrison's proposed "excited utterance" instruction was not a constitutional violation necessitating habe-

---

**3.** Harrison's two proposed instructions read as follows:

[EXCITED UTTERANCE:] During the course of this trial hearsay evidence, consisting of out of Court statements, has been adduced. Hearsay is a statement other than a statement made in Court at trial offered into evidence to prove the truth of the matter asserted. Hearsay is generally inadmissible as evidence unless those statements qualify as an exception to the hearsay rule.

An excited utterance is a statement that relates to a startling event or condition made while the declarant was under the stress or excitement caused by an event or condition.

Excited utterances are admissible even though they are hearsay because they may, in themselves, possess circumstantial qualities of trustworthiness, and because circumstances surrounding an incident may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of fabrication.

[LACK OF MOTIVE:] The question of the motive of the defendant to kill Maria Harrison has been raised during the trial. While motive is not an essential element of the crime of 1st Degree Murder, evidence of lack of motive is always permissible as a circumstance favorable to the accused. Such evidence is to be considered by you with the other evidence bearing on the question of guilt or innocence, and is to be given such weight as you believe it to be fairly entitled to.

as relief. The hearsay testimony Harrison wished to present via the excited utterance exception would have indicated that he declared shortly after the shooting that his wife's wound was inflicted accidentally. Since the jury had several other opportunities to hear Harrison's claim that the shooting was accidental, we do not believe that the trial court's refusal to give the proposed instruction was an error of constitutional magnitude.

For the foregoing reasons, we affirm.