**Randy Lee CLOSS, Appellant,**

v.

**Walter LEAPLEY, Warden, South Dakota State Penitentiary, and Mark W. Barnett, Attorney General, State of South Dakota, Appellees.**

**No. 93–1847.**

United States Court of Appeals, Eighth Circuit.

March 9, 1994.

Counsel who presented argument on behalf of the appellant was Susan Jansa Brunick of Sioux Falls, South Dakota.

Counsel who presented argument on behalf of the appellee was Patricia J. Cronin,

Assistant Attorney General, Pierre, South Dakota.

Before JOHN R. GIBSON * and MORRIS SHEPPARD ARNOLD, Circuit Judges, and WOODS,** District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

In late 1982, someone broke into Janet Gullickson's house and stole several items of jewelry, including various rings with diamonds, an amethyst, and glass stones in them. Randy Closs was subsequently convicted of burglary and theft in state court in South Dakota in connection with that break-in. In the same trial, he was also convicted of burglary and theft related to items stolen from a car about a month after the house break-in.

After exhausting his state remedies, Mr. Closs petitioned for a writ of habeas corpus in federal court with respect to the convictions for the house break-in. (He does not challenge the convictions related to the items stolen from the car.) The district court denied that petition in early 1993. Mr. Closs appeals, arguing that the evidence was insufficient, that his trial on the house break-in charges should have been separate from his trial on the charges with respect to the items stolen from the car, and that the jury was not properly instructed on South Dakota law relating to possession of recently stolen property. We affirm the district court.[1]

I.

Mr. Closs argues that under the relevant South Dakota law, entry into an occupied structure is a necessary element for a conviction of burglary for the house break-in (no one disputes that assertion), that no evidence was ever offered to establish his presence in Ms. Gullickson's house, and therefore that the evidence was constitutionally insufficient to sustain that conviction for burglary. *See,*

*e.g., Jackson v. Virginia,* 443 U.S. 307, 316–18, 324, 99 S.Ct. 2781, 2787–88, 2791–92, 61 L.Ed.2d 560 (1979). (Mr. Closs does not specifically state that he is also challenging the theft conviction. Since the theft conviction is integrally tied to the burglary conviction, however, we construe his argument on this issue as contesting the theft conviction as well.)

"[T]he critical inquiry on review of the sufficiency of the evidence ... must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.... [T]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Id.* at 318–19, 99 S.Ct. at 2788–89; *see also id.* at 324, 326, 99 S.Ct. at 2791–92, 2793.

At trial, Ms. Gullickson testified that her bedroom had been "ransacked"; that various rings with diamonds (including her wedding ring), an amethyst, and glass stones in them were missing; that there were scratches on the frame of the door from the garage into the house; and that glass had been broken in that door. A detective and a police officer both testified that there were footprints in the snow of Ms. Gullickson's yard leading to her house. Tracking the footprints in the direction from which they came, the detective testified that the footprints followed a meandering trail to within 20 or 30 yards of the house where Mr. Closs lived. Although the police stopped following the footprints at that point, which was the Closs property line, the detective stated that he could see that the footprints "continued towards the Closs residence."

The detective further testified that when Mr. Closs was arrested and searched in connection with the car break-in, Mr. Closs had in his wallet a small envelope that was

---

* THE HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted; he took senior status on January 1, 1994, before this opinion was filed.

** The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable John B. Jones, Chief Judge, United States District Court for the District of South Dakota.

"frayed," "ragged," and "torn." That envelope held, the detective stated, "what appeared to be five diamonds and a purple-colored stone which ... was later identified as a[n] amethyst stone." A jeweler subsequently testified that the stones were in fact two diamonds, an amethyst, and three "colorless synthetic stones."

Ms. Gullickson testified that one of the diamonds recovered from Mr. Closs "[caught] the light" like the largest diamond in her wedding ring, was "the same cut" as the largest diamond in her wedding ring, was "the same size" as the largest diamond in her wedding ring, and was indeed, in her opinion, the largest diamond from her wedding ring. Ms. Gullickson further testified that the other diamond recovered from Mr. Closs was "the same" size and cut as one of the smaller diamonds in her wedding ring and that, in her opinion, it was indeed one of the smaller diamonds from her wedding ring. Ms. Gullickson also testified that the amethyst recovered from Mr. Closs was—in color, cut, and size—"exactly like" the one she owned in one of the other missing rings and that, in her opinion, the amethyst was the one missing. Finally, Ms. Gullickson testified that the three other stones recovered from Mr. Closs were "the same" size and color as the glass stones in another of the missing rings, although she could not identify them unequivocally.

Mr. Closs argues that his possession of the stolen property is insufficient by itself to sustain his conviction for burglary and that there was no evidence connecting him to the break-in at Ms. Gullickson's house. We disagree. The footprints in the snow of Ms. Gullickson's yard, which the police followed within hours of the burglary, led to the property where Mr. Closs was living. Those footprints provide the corroboration necessary to sustain a conviction for burglary. *See, e.g., United States v. Hankins,* 931 F.2d 1256, 1258, 1261 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991), and *United States v. Jones,* 418 F.2d 818, 823 (8th Cir.1969); *see also Ward v. Lockhart,* 841 F.2d 844, 846–48 (8th Cir.1988), and *Cosby v. Jones,* 682 F.2d 1373, 1380, 1383 (11th Cir.1982). In our view, a rational trier of fact, evaluating that evidence "in the light most favorable to the prosecution," *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, could conclude beyond a reasonable doubt that Mr. Closs was the person who broke into Ms. Gullickson's house and took her rings. We therefore affirm the district court in its ruling that the evidence was constitutionally sufficient to sustain the convictions of Mr. Closs related to the house break-in.

## II.

Just a month after the break-in at Ms. Gullickson's house, someone stole an eight-track stereo and a 40–channel CB radio from Rick Johnson's car. Footprints in the snow adjacent to the car followed a meandering trail to the steps of the house where Mr. Closs was living, and the police arrested Mr. Closs for stealing the items from Mr. Johnson's car. It was during the search of Mr. Closs with respect to the items stolen from the car that the police found the stones connected to the house break-in.

The charges with respect to the house break-in and with respect to the items stolen from the car were originally made in two separate informations. Mr. Closs moved for separate trials; the state prosecutor moved to consolidate the cases for trial. After a hearing, the state court consolidated the cases over the objections of Mr. Closs.

In his habeas proceeding, Mr. Closs contends that the joinder of the two cases was so prejudicial as to amount to a denial of due process. *See, e.g., Robinson v. Wyrick,* 735 F.2d 1091, 1094 (8th Cir.1984), *cert. denied,* 469 U.S. 983, 105 S.Ct. 390, 83 L.Ed.2d 324 (1984). Mr. Closs makes two arguments in this regard. First, he concedes that the evidence relating to the items stolen from the car was strong but asserts that the evidence relating to the house break-in was weak. He contends, therefore, that the jury was unfairly influenced in its verdicts on the house break-in by the presentation of the evidence with respect to the items stolen from the car. Second, Mr. Closs argues that he was prejudiced by his inability to testify with respect to the house break-in—*i.e.,* to offer an explanation of where he got the stones—without

jeopardizing his claim of innocence as to the items that were stolen from the car.

"The argument against joinder [of offenses] is that the defendant may be prejudiced for one or more of the following reasons: ... the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime ... charged; or ... the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one." *Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir. 1964); *see also United States v. Foutz*, 540 F.2d 733, 736–37 (4th Cir.1976), and *United States v. Ragghianti*, 527 F.2d 586, 587 (9th Cir.1975). "If ... the evidence of each of the crimes on trial would be admissible in a separate trial for the other, the possibility of 'criminal propensity' prejudice would be in no way enlarged by the fact of joinder." *Drew*, 331 F.2d at 90; *see also United States v. Halper*, 590 F.2d 422, 431 (2d Cir.1978), and *United States v. Foutz*, 540 F.2d at 736–37. Even where the evidence of one crime that is presented in a trial of two offenses would not be admissible in a separate trial of the other crime, however, "[t]he federal courts ... have ... found no prejudicial effect from joinder when the evidence of each crime is simple and distinct.... This rests upon the assumption that, with a proper charge, the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury's cumulating the evidence is substantially reduced." *Drew*, 331 F.2d at 91; *see also United States v. Halper*, 590 F.2d at 431, and *Drew*, 331 F.2d at 91–92.

■ The state argues that the offenses related to the house break-in and the offenses related to the items stolen from the car were committed in a similar enough manner that evidence of each crime would have been admissible in a separate trial with respect to the other. We need not decide that question, for, after reading the transcript of the state trial, it is obvious to us that the evidence with respect to each of the crimes charged was simple and distinct enough that there was no reasonable possibility of jury confusion or undue influence of one set of charges upon the verdicts for the other. Neither the witnesses nor the lawyers showed any uncertainty with respect to which offense was being discussed at any particular time, *see, e.g., Drew*, 331 F.2d at 93, and the trial itself (excluding jury selection) lasted only two and a half days. The state court's instructions distinguished clearly between the charges and explicitly directed the jury to consider each of the offenses separately. Under those circumstances, we hold that there was no deprivation of due process in the state court's failure to give Mr. Closs separate trials on the basis of possible prejudice arising from jury confusion or any undue influence created by two sets of charges. Accordingly, we affirm the district court in its ruling on that issue.

■ The courts have also recognized the danger in joinder of offenses that arises from the difficulty of presenting separate defenses to each offense charged, especially where the defendant may want to testify with respect to one offense but not the other. *See, e.g., United States v. Foutz*, 540 F.2d at 736; *United States v. Ragghianti*, 527 F.2d at 587; and *Drew*, 331 F.2d at 88. Prejudice sufficient to require separate trials on that basis, however, may be established only by "a persuasive and detailed showing regarding the testimony [that the defendant] would give on the one count he wishes severed and the reason he cannot testify on the other counts." *United States v. Possick*, 849 F.2d 332, 338 (8th Cir.1988); *see also United States v. Lindsey*, 782 F.2d 116, 118 (8th Cir.1986) (*per curiam*), and *United States v. Jardan*, 552 F.2d 216, 220 (8th Cir.1977), *cert. denied*, 433 U.S. 912, 97 S.Ct. 2982, 53 L.Ed.2d 1097 (1977).

■ In the hearing with respect to the motion for separate trials, counsel for Mr. Closs asserted that there would be prejudice to him "if he were to get up there and just talk about one of the counts and not dispute the other three" but offered no specifics as to the testimony that would be given or the reasons why Mr. Closs would not be willing

to testify on all of the counts. Indeed, counsel never stated unequivocally that Mr. Closs would in fact testify if the trials were separate. Nor do the briefs for that motion offer any further information on those questions. Under those circumstances, we hold that there was no deprivation of due process in the state court's failure to grant separate trials to Mr. Closs on the basis of a compromise of his right against self-incrimination. *See, e.g., United States v. Jardan,* 552 F.2d at 220; *see also United States v. Armstrong,* 621 F.2d 951, 954 (9th Cir.1980). Accordingly, we affirm the district court in its ruling on that issue as well.

### III.

During the conference on jury instructions, Mr. Closs requested two instructions related to the inferences that could be drawn from possession of recently stolen property. One instruction declared that mere possession of recently stolen property was not enough to support a conviction for theft and that "other circumstances" probative of guilt were required for such a conviction. The other instruction gave the test under South Dakota law for recency—"whether the interval between the date of the alleged theft and the date of possession is so short as to render it morally or reasonably certain that there could have been no intermediate change of possession." *See, e.g., State v. Ellestad,* 88 S.D. 595, 225 N.W.2d 879, 882 (1975).

The state court rejected both instructions. Mr. Closs argues in his habeas proceeding that the two instructions presented his theory of defense and therefore that the state court's refusal to give them amounted to a deprivation of due process. *See, e.g., Frey v. Leapley,* 931 F.2d 1253, 1254–55 (8th Cir. 1991); *see also Harrison v. Dahm,* 880 F.2d 999, 1002 (8th Cir.1989); *United States ex rel. Means v. Solem,* 646 F.2d 322, 332 (8th Cir.1980); and *Zemina v. Solem,* 573 F.2d 1027, 1028 (8th Cir.1978) (*per curiam* ).

A conviction under instructions contrary to the first instruction requested (mere possession of stolen property not enough to convict) would be unconstitutional. *See, e.g., Ward v. Lockhart,* 841 F.2d 844, 846–48 (8th Cir. 1988), and *United States v. Jones,* 418 F.2d

818, 823 (8th Cir.1969); *see also United States v. Hankins,* 931 F.2d 1256, 1258, 1261 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 243, 116 L.Ed.2d 198 (1991), and *Cosby v. Jones,* 682 F.2d 1373, 1380, 1383 (11th Cir.1982). In this case, however, no such contrary instruction was given. We have already determined, moreover, that the evidence was constitutionally sufficient to sustain the convictions for burglary and theft related to the house break-in.

 We note that under the case law related to habeas proceedings, the trial court's refusal to give a requested instruction must have "amount[ed] to 'a fundamental defect which inherently result[ed] in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure,'" *Frey,* 931 F.2d at 1255, quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), before that failure may be the basis for habeas relief. *See, e.g., Frey,* 931 F.2d at 1255; *see also Baker v. Leapley,* 965 F.2d 657, 659 (8th Cir.1992) (*per curiam* ); *Harrison,* 880 F.2d at 1002; *Berrisford v. Wood,* 826 F.2d 747, 752 (8th Cir.1987), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988); *United States ex rel. Means,* 646 F.2d at 332; and *DeBerry v. Wolff,* 513 F.2d 1336, 1339 (8th Cir.1975). Under those circumstances, and after reading the transcript of the trial several times, it is our holding that the state court's refusal to give the instruction on mere possession did not amount to "a fundamental defect resulting in a complete miscarriage of justice," *Baker,* 965 F.2d at 659, and did not "so infect[ ] the entire trial as to deprive the defendant of a fair trial," *Berrisford,* 826 F.2d at 752. *See also Frey,* 931 F.2d at 1255; *Harrison,* 880 F.2d at 1002; *United States ex rel. Means,* 646 F.2d at 332; and *DeBerry,* 513 F.2d at 1339. We therefore affirm the district court in its ruling on that issue.

 We turn, then, to the second instruction requested (test for recency). "A defendant upon timely request is entitled to an instruction if it contains a correct statement of the law and has support in the record." *United States v. Kabat,* 797 F.2d

580, 590 (8th Cir.1986), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987); *see also United States ex rel. Means,* 646 F.2d at 328. "It is sufficient that the defendant have shown an 'underlying evidentiary foundation'" for the theory of defense presented. *United States v. Kabat,* 797 F.2d at 590–91, quoting *United States v. Goss,* 650 F.2d 1336, 1345 (5th Cir.1981). The defendant does not have to testify or even offer any evidence; the basis for the defendant's theory may derive from the testimony of government witnesses on direct or cross-examination. *See, e.g., United States v. Prieskorn,* 658 F.2d 631, 636 (8th Cir.1981). Finally, the evidence to support a theory of defense need not be overwhelming; a defendant is entitled to an instruction on a theory of defense even though the evidentiary basis for that theory is "weak, inconsistent, or of doubtful credibility." *United States v. Casperson,* 773 F.2d 216, 223 n. 12 (8th Cir. 1985); *see also United States v. Kabat,* 797 F.2d at 590–91, and *United States v. Prieskorn,* 658 F.2d at 636.

According to the briefs, Mr. Closs based his theory of defense on the fact that a month elapsed between the break-in at Ms. Gullickson's house and the time when the stones from Ms. Gullickson's rings were found in his possession. We do not have a transcript of either the opening statement or the closing argument for the defense (apparently the practice in state courts in South Dakota is not to record those parts of the trial absent a request from one of the lawyers). In the jury instructions conference, however, counsel for Mr. Closs gave as the basis for the instruction only the following explanation:

> I think what the State is alleging or has intimated throughout this whole testimony is that he was caught with these diamonds and shortly thereafter he was picked up on a different burglary, that being the car burglary, and I believe the State is probably going to show the connection between the footprint from the house, the Gullickson house, and the footprints in connection with the car incident and then within a month or so later he was picked up and he had the possession of those stones, which the State is going to allege came from the

Gullickson house, and therefore, it is—I would say the State is trying to connect the time element—you know, that it hasn't been that long and here he has the jewels.

If Mr. Closs was in fact offering a theory of defense connected to a lack of recency between the house break-in and his possession of the stones from Ms. Gullickson's rings, we do not consider that to have been explicitly stated in the jury instructions conference as the basis for the requested instruction. Giving Mr. Closs the benefit of the doubt, however, we consider his argument in light of the events that actually occurred at trial.

▇▇ The state prosecutor's closing argument was recorded (at defense counsel's request). The state prosecutor made only one reference to the period elapsed between the house break-in and the time when Ms. Gullickson's stones were found in the possession of Mr. Closs. The crux of that part of the closing argument was that the envelope in which the stones were found was "frayed and bent and dog-eared, which gives us an indication of the length of time that it had been in his pocket. In other words, it wasn't something that came into his possession or was put into his billfold within that day."

It is our view that the state prosecutor's argument was not that the period between the two thefts was so short as to require the inference that there could have been no intervening transfer of possession by the thief from the house break-in, as defense counsel feared, but, rather, that the condition of the envelope was such that Mr. Closs could easily have had it in his possession for an interval of as long as a month. Under those circumstances, we do not believe that the state court's refusal to give the instruction on recency amounted to "a fundamental defect resulting in a complete miscarriage of justice," *Baker,* 965 F.2d at 659, or that it "so infected the entire trial as to deprive the defendant of a fair trial," *Berrisford,* 826 F.2d at 752. *See also Frey,* 931 F.2d at 1255; *Harrison,* 880 F.2d at 1002; *United States ex rel. Means,* 646 F.2d at 332; and *DeBerry,* 513 F.2d at 1339. We therefore affirm the district court in its ruling that the state

court's refusal to give that instruction did not deprive Mr. Closs of due process.

## IV.

For the reasons stated, the judgment of the district court is affirmed.