# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1834

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Emil Earl Little Dog, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 17, 2004
Filed: February 22, 2005

_____

Before SMITH, BEAM, and BENTON Circuit Judges.

_____

SMITH, Circuit Judge.

Emil Earl Little Dog was indicted on four counts of aggravated sexual abuse, two counts of sexual contact, and one count of obstruction of justice. Little Dog was found guilty on all but one of the sexual contact counts. He was sentenced[1] to 360 months' imprisonment, three years of supervised release, and a special assessment of $600. Little Dog seeks reversal of his conviction based upon five alleged district court errors. We affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

## I. *Background*

Three minor females, siblings of Little Dog's wife, Justine Grindstone, made allegations of sexual abuse against Little Dog. Grindstone's mother, Patricia Red Legs, had twelve children. South Dakota social services removed the children from the Red Legs' custody due to the parents' chronic alcoholism. Tribal social services, for some period of time, placed the girls, nine-year old MRL, fourteen-year old LRL, and seven-year old KRL,[2] with Little Dog and Grindstone at their home at Old Bear Soldier Housing.

MRL claimed that Little Dog sexually abused her "more times than she could count." According to MRL, the first penetration occurred in Little Dog's bedroom when she was about ten years old. She indicated other similar incidents followed, in the bedroom, in Little Dog's car and truck, and in remote, rural areas near the Messiah Church. MRL identified some of these areas with photographs provided by F.B.I. Special Agent Kelly Kenser.

MRL testified that the abuse occurred often and usually while Grindstone was away from home. The abuse did not cease after MRL moved to another relative's home because Little Dog would pick her up and continue to take her to remote areas. MRL was so traumatized by the abuse that she attempted suicide to escape from Little Dog. After her first interview with Kenser, MRL routinely wet the bed, something she had never done before. MRL also testified that while placed at New Beginnings adolescent treatment facility, she feared Little Dog would find and harm her so she began to sleep on the couch near the staff room. MRL ran away from New Beginnings to avoid having to testify in court when she learned Little Dog would be present.

---

[2]At trial, the jury acquitted Little Dog of the charges related to KRL. The facts underlying that charge will not be recounted.

Medical evidence in the case was inconclusive. Dr. Richard Kaplan, former Medical Director at the Center on Child Abuse at the Children's Hospital in Sioux Falls, South Dakota, testified that MRL's gynecological examination was normal. He indicated that a normal vaginal finding was not unusual in sexual assault cases.

The evidence regarding Little Dog's abuse of LRL came from two other of her sisters, VYB and MRL2. The girls recalled that the morning after a night of heavy drinking at Little Dog's residence, they observed Little Dog standing over LRL while her pants were pulled down to her knees. At the time, LRL was unconscious from excessive drinking. VYB claimed she saw Little Dog put his fingers inside of LRL's vagina or anus and move them. MRL2 recalled the events a bit differently but also described seeing Little Dog with his fingers inside LRL's vagina and recalled that LRL was unconscious at the time. LRL testified that she had no recollection of the event.

Little Dog was initially charged with three counts of aggravated sexual abuse and one count of sexual contact. A first superseding indictment was filed, adding an obstruction of justice charge based upon evidence that Little Dog attempted to influence the perception of MRL's allegations through a cellmate[3] who had indirect contact with MRL. A second superseding indictment was later filed, adding an

---

[3]Little Dog was placed in a cell with Richard Red Fox who had two younger sisters in the New Beginnings residence with MRL. Little Dog asked Red Fox to write a letter to his sisters that would help him. Red Fox declined but agreed to pass a letter to his sisters if Little Dog wrote one, which Little Dog did. At trial, Little Dog admitted that he intended the letter to instruct Red Fox's sisters to tell authorities that MRL told the sisters she hated Grindstone and Little Dog, and that MRL had lied about the sexual allegations. Little Dog claimed that although he wrote the letter, he did not intend or instruct Red Fox to give it to his sisters. Red Fox admitted he wrote a letter to his sisters to accompany Little Dog's letter. This letter advised his sisters not to acquiesce to Little Dog's request, but to stick to their story in court.

additional count of aggravated sexual abuse of a child and one count of sexual contact. Before trial, Little Dog made a motion to compel a gynecological exam of MRL. The trial court denied the motion.

On the morning of the second day of the trial, the district court discovered it had failed to swear in the jury. With counsel in chambers, the court said "the jury selection process yesterday was something I have not seen previously in the almost nine years I've been on the bench . . . . With all the extra commotion going on in the courtroom yesterday of course we had to take a recess and I neglected to have the jury sworn. The panel was sworn but the 13 members were not sworn." The district court, upon reviewing relevant case law, determined that it was error not to swear in the jury following voir dire. However, the court found that the error was harmless. The district court then informed counsel that it would swear in the jury. Little Dog moved for a mistrial, the motion was denied.

Little Dog filed a motion under Fed. R. Crim. P. 8(a) to sever the obstruction of justice charge from the sexually related charges.[4] The district court denied this motion. Little Dog renewed this motion at the close of the government's case-in-chief and at the close of all the evidence, but each time it was denied. Little Dog was found guilty on all but one count of sexual contact involving KRL. He filed a motion for judgment of acquittal or, in the alternative, a motion for a new trial. The district court denied both motions. The district court sentenced Little Dog to 360 months' imprisonment, three years of supervised release, and a special assessment of $600.

---

[4]The applicable portion of Fed. R. Crim. P. 8(a) states:

The indictment . . . may charge a defendant in separate counts with two or more offenses if the offenses charged . . . are of the same or similar character or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

On appeal, Little Dog argues that the district court committed five reversible errors including: (1) denying his motion for judgment of acquittal based on insufficient evidence; (2) failing to swear in the jury until after opening statements; (3) denying his motion to sever his obstruction of justice count from his sexual abuse counts; (4) refusing to permit his medical expert to conduct a gynecological examination; and (5) refusing to instruct the jury that the crime of obstruction of justice requires specific intent.

## II. *Discussion*
### A. *Little Dog's Motion for Judgment of Acquittal*
### *Based on Insufficient Evidence*

Little Dog contends that "this case is one of those rare ones where the evidence presented by the government with regard to sexual abuse and sexual contact was insufficient for a jury to conclude [Little Dog] was guilty beyond a reasonable doubt." Little Dog bases this contention upon various inconsistencies and credibility concerns with the girls' accounts. However, as we have often noted, it is properly the province of a jury to resolve matters of witness credibility. *United States v. Cole*, 380 F.3d 422, 425 (8th Cir. 2004) (citing *United States v. Enriquez*, 201 F.3d 1072, 1074 (8th Cir. 2000). Our role is to determine whether a rational jury would have no choice but to reasonably doubt the existence of an element of a crime charged. *United States v. Williams*, 181 F.3d 945, 950 (8th Cir. 1999). This is not such a case. The record facts indicate the jury properly considered and weighed the evidence and even acquitted Little Dog on one of the charges. MRL, LRL, VYB and MRL2 gave accounts that, if believed, would establish a sufficient factual basis for Little Dog's conviction. The inconsistencies pointed out by Little Dog do not make it unreasonable for a jury to find him guilty of the charges on the evidence presented.[5]

---

[5]Little Dog claims that because the district court instructed the jury that to convict, the government had to prove Little Dog engaged in sexual contact with LRL between July 2, 2001, and July 23, 2002, the sexual contact must have occurred

B. *Failure to Swear in the Jury Until After Opening Statements*

Little Dog contends that the failure to properly swear in the jury should result in a mistrial or, at the very least, striking the testimony of witnesses who testified prior to the swearing-in. This issue raises a question of law which we review de novo. *Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir.), *cert. denied*, 490 U.S. 1040 (1989). We find no merit in Little Dog's argument.

As the district court acknowledged, it was error not to administer the oath to the jurors before the beginning of the trial. The swearing-in of a jury is important because at that point jeopardy attaches. *Crist v. Bretz*, 437 U.S. 28, 38 (1978). In the absence of prejudice caused by the delay in administering the oath, the error is harmless. *Cooper v. Campbell*, 597 F.2d 628 (8th Cir.), *cert. denied*, 444 U.S. 852 (1979) (determining that no prejudice was shown by the delay); *United States v. Hopkins*, 458 F.2d 1353, 1354 (5th Cir. 1972) (holding that no prejudice was shown by the delayed swearing in of the jury); *United States v. Martin*, 740 F.2d 1352, 1358 (6th Cir. 1984) (determining that a defendant's rights were not violated by the district court's failure to administer the oath following voir dire). Little Dog cites only unpersuasive, non-analogous state law cases to support his view that the district court

---

during this time period. Consequently, Little Dog contends his conviction must be reversed because the evidence only showed sexual abuse during 2000. Little Dog is incorrect. For an analogous situation, *see United States v. Joyner*, 539 F.2d 1162, 2264–65 (8th Cir. 1976) (holding a variance between the date in the indictment and the proof is not fatal if proof shows the acts charged were committed on a date within the statute of limitations and prior to the return date of the indictment). Here, the district court instructed the jury that the evidence had to establish beyond a reasonable doubt that the offenses were committed on a date or dates near the alleged dates. Little Dog also argues that jury instruction fifteen made the date of the offense an element of the crime, therefore making it difficult for him to prepare his defense. For good reason, the district court rejected this claim. *See United States v. Stuckey*, 220 F.3d 976, 982 (8th Cir. 2000) (holding that the date of the offense is not an element of the charge).

was obligated to declare a mistrial. Little Dog fails to prove the district court's error prejudiced his defense.

C. *Little Dog's Motion to Sever His Obstruction of Justice Count From His Sexual Abuse Counts*

Little Dog argues that joinder of the obstruction charge under Fed. R. Crim. P. 8(a) was improper because that charge was not based on the same act or transaction as the other counts, nor was it connected with, or part of a common scheme or plan. Alternatively, Little Dog indicates that even if joinder is proper, the district court should have severed because he established prejudice under Fed. R. Crim. P. 14. We review a decision to join counts de novo. *United States v. Boyd*, 180 F.3d 967, 981 (8th Cir. 1999). Little Dog is incorrect.

Broad interpretation of Fed. R. Crim. P. 8(a) is encouraged for the efficient administration of justice. *Haggard v. United States*, 369 F.2d 968, 973 (8th Cir. 1966) (decided in context of multiple defendants joined in the same indictment). We have recognized that:

> Prejudice may result from a possibility that the jury might use evidence of one crime to infer guilt on the other or that the jury might cumulate the evidence to find guilt if the crimes were considered separately. On the other hand, a defendant does not suffer any undue prejudice by a joint trial if the evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime.

*United States v. Davis*, 103 F.3d 660, 981-82 (8th Cir. 1996).

Little Dog's obstruction charge is connected to, and interrelated with the sexual abuse charges. If the district court had severed the charges, evidence of Little Dog's attempt to tamper with or influence witnesses would have been admissible in his sexual abuse trial to show criminal intent and state of mind. In a separate trial for

obstruction, evidence of Little Dog's sexual abuse of MRL would be required to show his motive for seeking to influence Red Legs' sisters into giving false testimony about MRL. Therefore, the "evidence is such that one crime would be probative and admissible at the defendant's separate trial of the other crime." *Id.*; *see also United States v. Moeckly*, 769 F.2d 453, 465 (8th Cir. 1985) (holding that the district court properly denied severance because the same proof of the smuggling conspiracies would have been required in separate trials).

To avoid prejudice, the district court can always grant severance. *Haggard*, 369 F.2d at 973. A denial to sever is only reversed if the defendant can show severe prejudice. *United States v. Boyd*, 180 F.3d 967, 982 (8th Cir. 1999). "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996). Little Dog contends he was prejudiced because he did not want to testify to the obstruction charge but did want to testify to the sexual charges. That is not enough to require severance. In *United States v. Jardan*, 552 F2d 216, 220 (8th Cir. 1977), we denied a motion to sever as speculative when the defendant indicated his defense to count one was stronger than for count two. We cited *Baker v. United States*, 401 F.2d 958 (D.C. Cir. 1968), with approval:

> [N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying.

*Id.* at 977 (internal quotations omitted); *see also Closs v. Leapley*, 18 F.3d 574, 578 (8th Cir. 1994) (holding prejudice sufficient to require separate trials where a defendant wants to testify in one but not the other may be established only by a persuasive and detailed showing regarding the testimony that the defendant would give on the one count he wishes severed and the reason why he cannot testify on the other counts). Little Dog failed to provide the trial judge sufficient information that he had important testimony to give on the sexual abuse offense but a strong need to refrain from testifying on the obstruction count. On this record, we are also unconvinced.

### D. *Refusing to Permit Little Dog's Medical Expert to Conduct a Gynecological Examination of MRL*

Little Dog argues that his expert medical witness, Dr. Scott Berry, should have been permitted to conduct a gynecological exam of MRL in order to enhance Dr. Berry's credibility with the jury. Little Dog also argues that in refusing to grant his expert an opportunity to examine MRL, the district court denied him a fair trial. We review the denial of a motion to compel examination of a child for abuse of discretion. *United States v. Summer*, 119 F.3d 658, 663 (8th Cir. 1997). The defendant must convince the court that expert services are necessary to present an adequate defense. *United States v. Sailer*, 552 F.2d 213, 215 (8th Cir. 1977). We find no abuse of discretion.

Little Dog's arguments are insufficient to prove an additional exam was necessary for him to present an adequate defense. The record contained gynecological examination data for MRL consistent with Little Dog's defense. The examination was normal. Dr. Berry was provided with a tape of MRL's medical examination and agreed with the conclusion. We see no unfairness to Little Dog in not requiring MRL to submit to an additional physical examination to confirm what one exam had already shown—that the child showed no evidence of physical injury. Dr. Berry's

credibility is unaffected in a case such as this, where there is no controversy about the ultimate medical results. The district court's ruling did not deny Little Dog a fair trial.

E. *Refusal to Instruct the Jury that the Crime of Obstruction of Justice Requires Specific Intent*

Finally, Little Dog contends that the district court erred in not instructing the jury that obstruction of justice requires specific intent. We review the district court instructions in their entirety. Failure to give a requested instruction is not erroneous if the court's charge, as a whole, correctly instructs the jury on the applicable law. *United States v. Mitchell*, 463 F.2d 187, 191 (8th Cir. 1972). We will reverse only if the error affected the substantial rights of the parties. *Jones v. Swanson*, 341 F.3d 723, 734 (8th Cir. 2003). We hold Little Dog's substantial rights were unaffected by the district court's refusal to give the specific instruction he requested.

Little Dog correctly notes that the charge of obstruction of justice requires a jury instruction on specific intent. However, the instruction given by the district court in this case did so. The court gave Jury Instruction Eighteen which provides:

INSTRUCTION NO. 18

3. That by urging, suggesting, or instructing Tessie and Trish Red Fox to give false or misleading testimony at his upcoming trial, the defendant corruptly *endeavored* to obstruct the due administration of justice.

As used above and in this case, the word endeavored means to *knowingly and intentionally* try to obtain testimony which the defendant would have known would be materially false, his idea being to hinder or obstruct the prosecution of the federal case pending against him.

(emphasis added). Little Dog argues that although he admitted participating in the preparation of the letter, he denied ever intending or knowing that it would actually

-10-

be delivered. Reviewing the district court's actual jury charge, we hold that it correctly instructed the jury on the law.

### F. *Career Offender*

Prior to oral argument, Little Dog filed a motion for supplemental briefing to address potential issues raised by the Supreme Court's decision in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and our decision in *United States v. Mooney*, No. 02-3388, 2004 WL 1636960 (8th Cir. July 23, 2004), *vacated and reh'g en banc granted*, August 6, 2004. Since oral argument, the Supreme Court issued its ruling in *United States v. Booker*, 125 S. Ct. 738 (2005). Based upon our review of the record and *Booker*, we deny the motion for supplemental briefing. Little Dog was sentenced as a career criminal under U.S.S.G. § 4B1.1, resulting in a Criminal History Category VI. In his motion, Little Dog argued that because of *Booker*, the district court had discretion to not sentence within the Guideline range, and contends that the court would have sentenced him differently if the Guidelines were not mandatory. He cites the following statement of the district court in the sentencing transcript:

> [T]hese criminal career enhancements are tough propositions. I've always thought those kind of things were stupid, kind of a mindless thing like they have in California, three strikes and you're out. This isn't a baseball game or something. . . . It's just a mindless approach to justice, is what it is. . . .

However, the district court set Little Dog's criminal history category based upon the undisputed fact that he had been convicted of two prior violent felonies. Such a fact does not need to be established by proof beyond a reasonable doubt. *Booker*, 125 S.Ct. at 756. The record is clear that the district court chose not to downwardly depart from the Guidelines understanding its discretion to do so. In his motion, Little Dog omits a crucial section of the sentencing transcript, in which the district court concluded:

-11-

I do not intend to downwardly depart or to upwardly depart. I have not given notice to that effect and I don't think under the facts here that either an upward departure or a downward departure would be appropriate. I am convinced that I do have the authority to downwardly depart from a career criminal status in the appropriate case, but this is not such a case.

We find no discord between the district court's decision and *Booker*.

### III. *Conclusion*

For the foregoing reasons, we affirm the decision of the district court.

_____