In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-3929

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ELMER F. WIMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:15-cr-00017-LJM-CMM-1 — **Larry J. McKinney**, *Judge*.

ARGUED AUGUST 8, 2017 — DECIDED NOVEMBER 13, 2017

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK,
*Circuit Judges*.

PER CURIAM. Elmer Wiman was convicted by a jury of rob-
bing a credit union, carrying a firearm during and in relation
to a crime of violence (the robbery itself), and possessing a
firearm as a felon. On appeal he raises a narrow challenge:
that the district court's failure before the start of voir dire to
swear the venire to answer questions truthfully is a structural

error that warrants a new trial. We disagree, conclude that any error here is harmless, and affirm the judgment.

On Saint Patrick's Day in 2015, Wiman, then 66 years old, drove to a credit union in Vanderburgh County and walked inside during a lull at lunchtime. Dressed all in denim and donning a hat, sunglasses, and gloves, he approached one of the teller windows. He pointed a gun at the teller, pushed a small, soft-sided cooler toward her, and ordered her to put money inside it and to "make it snappy." She complied but, when he demanded even more cash, told him that she didn't have access to more. He grabbed the cooler and bolted, then turned back and told her to wait five minutes before calling the cops. The robbery was captured on the credit union's surveillance video.

Wiman fled in a gray Ford Taurus, and a police dispatch went out with a description of him and the car. Believing Wiman to be the robbery suspect, two police officers pulled him over in a parking lot and arrested him. At the police station, Wiman confessed to robbing the credit union. Inside the car, officers recovered the cooler, which contained sunglasses, a hat, gloves, a handgun, and $3,084 cash.

Wiman was indicted for robbing the credit union, 18 U.S.C. § 2113(a), using a firearm during and in relation to a crime of violence (the underlying robbery, as previously noted), *id.* § 924(c)(1)(A)(i), and possessing a firearm as a felon, *id.* § 922(g)(1). Later he unsuccessfully sought to suppress both the evidence found in the car and his resulting confession. The case eventually proceeded to trial.

This appeal arises out of the district judge's failure before the start of voir dire to administer an oath to the jurors. (Jurors

are given two oaths. First, before voir dire, they take an oath to answer questions truthfully. Later, after jury selection and before the start of trial, they swear that they will "well and truly try" the case and render a "true verdict" according to the law and the evidence.[1] Only the first oath is at issue here.) At the start of voir dire, the district judge explained that voir dire "means to tell the truth" and that the process is meant to "determine whether you can be a fair and impartial juror." The judge then proceeded to conduct voir dire himself, questioning the jurors about the presumption of innocence, their previous experience with banks or the law, and any ties they had to the credit union.

Upon realizing that he had not administered the voir dire oath, the district judge had the clerk swear in the potential jurors. The judge then acknowledged his oversight and decided to ask the jurors collectively if the oath would have changed their answers:

> Now, here's the question. This oath should have been given before we started any of our questions, and it was not. So the question is, would any of you have answered any of the questions differently that I gave to you under oath before or after? Anybody would have changed their opinion if they had been under oath?

No one spoke up, and the judge confirmed aloud that everyone's answers would have been the same. Defense counsel

---

[1] For sample oaths, see FED. JUDICIAL CTR., BENCHBOOK FOR U.S. DISTRICT COURT JUDGES § 7.08, at 268–69 (6th ed. 2013), *available at* https://www.fjc.gov/sites/default/files/2014/Benchbook-US-District-Judges-6TH-FJC-MAR-2013.pdf (visited Nov. 6, 2017).

promptly moved for a mistrial. Counsel acknowledged that the failure to administer the oath was an oversight but pointed out that voir dire had been carried out without the jurors being sworn: "I think it's an important procedure. It's part of the trial. I don't think we can just overlook it." The government opposed the motion and proposed as a remedy that each juror be asked separately if he would change any answers to the voir dire questions now that he had been sworn. The judge replied that "I think I remedied the problem now, but I'm not 1,000 percent sure," and took the matter under advisement.

The judge proceeded with jury selection. Once the jury had been selected but not yet empaneled, the judge revisited defense counsel's motion: he told the parties that if the jurors responded the same way individually to his questions as they had as a group, he would overrule the motion. One by one, the judge polled each juror and asked if his answers would "have been the same to all of the questions" if he had taken the oath at the outset of voir dire. Each juror answered yes. The judge then swore in the jury and allowed the proceedings to begin.

Over two days of testimony, the government presented strong evidence of Wiman's guilt. Two tellers testified in detail about the robbery and identified Wiman as the robber. Additionally, a police officer testified that the items with which the robber fled—the disguise, the cooler, the gun, and the credit union's money—were found in the car Wiman had been driving. The government also played a video of the robbery taken from the credit union's surveillance cameras as well as a video of Wiman's confession.

The jury found Wiman guilty on all counts, and the judge sentenced him to 110 months' imprisonment.

On appeal Wiman challenges only the district court's failure before voir dire to administer the jury an oath to tell the truth. That oversight, Wiman contends, is a structural defect not subject to harmless-error review because it "affects the framework within which the trial proceeds." Wiman argues that any "retroactive" oath would be insufficient:

> [T]he oath on voir dire is an essential part of the trial process designed and intended to allow an accused person to have confidence that the answers given by prospective jurors are true, and to impress upon prospective jurors that their answers must be true or there may be consequences, all so the accused person may intelligently exercise peremptory challenges and challenges for cause.

We disagree that any error was structural. First, Wiman is wrong that the voir dire oath is an "essential part" of a federal trial. We have found no rule or decision requiring that a venire be administered an oath. Similarly, although the empanelment oath is arguably more critical to the trial process (because jeopardy attaches once it is given, *see United States v. Little Dog*, 398 F.3d 1032, 1036 (8th Cir. 2005)), even that oath has not been determined to be expressly required. *See United States v. Turrieta*, 696 F.3d 972, 981–82 (10th Cir. 2012) ("[N]o binding authority, whether in the form of a constitutional provision, statute, rule, or judicial decision . . . [addresses] whether the Sixth Amendment right to trial by jury necessarily requires the jury be sworn."); *United States v. Pinero*, 948 F.2d 698, 700 (11th Cir. 1991) ("[I]t is not clear from the

caselaw whether juries in the federal court system are required to be sworn in.").

Second, even though the voir dire oath serves an important purpose, administering it belatedly did not constitute structural error. Structural errors affect "basic protections" without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991) (internal citations omitted) (identifying such protections as the denial of the right to counsel or self-representation, the lack of an impartial judge, and the denial of the right to a public trial). Errors that relate to basic protections "are so intrinsically harmful as to require automatic reversal" regardless of their effect on the outcome. *Neder v. United States*, 527 U.S. 1, 7 (1999). But the voir dire oath cannot be a "basic protection" because it is not even a trial *requirement*.

Third, the federal courts have never treated the failure to administer the empanelment oath—which in many respects is comparable to the voir dire oath—as structural error. Indeed, in one case in which the court failed altogether to administer the oath, the Tenth Circuit concluded that the error was not plain (in that case the defendant had not made a contemporaneous objection). *Turrieta*, 696 F.3d at 976. And on facts closer to this case, two circuits have concluded that oaths given belatedly before deliberations amounted only to harmless error. *See United States v. Hopkins*, 458 F.2d 1353, 1354 (5th Cir. 1972); *Little Dog*, 398 F.3d at 1036–37.

Here the district court's belated voir dire oath and Wiman's timely objection make harmless-error review appropriate. *See* FED. R. CRIM. P. 52(a). We agree with the govern-

ment's uncontested assertion that the delayed oath was harmless because Wiman was not prejudiced. Even without being administered the formal oath, the jurors were admonished by the judge at the outset of jury selection to comply with the oath's directions—to participate fully and honestly in voir dire. Additionally, once the district court realized its mistake, it immediately took remedial steps: it administered the proper oath and then questioned the jurors *twice*—both collectively and individually—to confirm that their answers would not have changed had they been sworn at the beginning of voir dire. Wiman has not suggested that any juror confusion or dishonesty resulted from the court's procedural misstep.

AFFIRMED.